## The White Deer Creek Improvement Co. *versus* Sassaman.

67    415|
f 211    7404|
f 211    7405|

1. An act authorized a corporation to improve a stream by removing obstructions, deepening it and protecting the banks so as to make it a "floating stream," but not to extend "the means of floating beyond the natural flow of the water of said creek." This confined the powers of the corporation within the channel and gave no right to interfere with riparian owners.

2. The act gave the company the right to enter on lands on the creek to obtain material and to deposit dirt, &c., paying compensation to be ascertained as railroad damages, for which the stockholders should be responsible: "Provided also," that the stockholders should be personally responsible for damages to private property in the exercise of the privileges conferred "or by the acts, omissions or neglect of said company," &c. This is an additional liability to that for damages for entry on the land, &c.

3. The one is assessed compensation for use, material, &c., the other damages for injuries suffered, &c.

4. If the company by splash floods or filling the channel with jammed logs · caused the water to overflow lands, they are liable for the injury.

5. The privilege of improving the channel, &c., is subordinate to the rights of the riparian owners, and the liability is not confined to the stockholders as such but primarily attaches to the corporations.

6. For injuries to riparian owners by causing the stream to overflow, the remedy is by common-law action, which would be an action on the case.

7. The opinion of a witness acquainted with the facts, of the total or aggregate loss or value of injury, is evidence as to the amount, without describing the elements in detail.

January 24th 1871. Before THOMPSON, C. J., READ, AGNEW and WILLIAMS, JJ. SHARSWOOD, J., at Nisi Prius.

[White Deer Creek Improvement Co. *v.* Sassaman.]

Error to the Court of Common Pleas of *Union county :* No. 114, to January Term 1871.

This was an action on the case brought July 11th 1870, by Henry P. Sassaman against the White Deer Improvement Company. The declaration recited that the plaintiff owned two lots of land through which White Deer creek flowed ; it contained four counts : 1. That the defendants had placed obstructions in White Deer creek so as by carelessness to overflow and injure the plaintiff's "said lands," and destroy about one half-acre of potatoes on one of said lots. 2. That the defendants, for the purpose of improving the channel of White Deer creek, so as to enable them to float timber, &c., so negligently constructed and managed the improvement as to cause the stream to overflow and injure the plaintiff's "said lands." 3. That the defendants in improving White Deer creek erected across it a "splash-dam," in order to collect sufficient water to float logs, and "having neglected to crib the banks of said stream along the lands of the plaintiff, let loose the waters accumulated in said splash-dam, and caused the waters in said stream below said dam to burst its banks and overflow the lands of the plaintiff, and to ruin his herbage," &c. 4. That the defendants placed obstructions in White Deer creek, so as to cause the water to overflow its banks, run into and fill the cellar of plaintiff's dwelling-house on one of said lots, injuring the vegetation, and rendering plaintiff's dwelling unwholesome, &c.

The defendants were incorporated by Act of May 21st 1864. Section 1 gave them " power and authority to use so much of the capital stock, hereinafter created, as they may find necessary in improving the channel of White Deer creek and its branches, from their several sources to its junction with the West Branch of the Susquehanna river, whether the same be by building dams at suitable places, with log sluice-ways, or in removing from the channel of said creek and its branches rocks and other obstructions ; in straightening and deepening the channel from time to time, as occasion may require ; in protecting the banks and confining the currents by cribs or rip-rapping, or by guarding-bars, affording a proper floating for logs, timber, shingles and so forth, down said creek to its junction with the West Branch of the Susquehanna river : *Provided,* That nothing herein contained shall be so construed as to compel the said corporation to provide the means of floating beyond the natural flow of the water of said creek ; nor shall they be in any manner responsible for loss or damage to logs, timber or whatever may be floated in the improved channel of said creek, which shall not be caused by the acts, omissions or neglect of the said company, its officers or agents.

" Section 7. That the said company shall have full power and authority to enter upon the lands forming the banks of said creek and its branches, for the purpose of obtaining material to be

used in the improvement of the channel, and may deposit upon the banks of said creek dirt, gravel, rocks and whatever may impede the channel of said creek and its branches, and generally may enter upon and use the banks of said creek, at any and all times and at any and all points, in order fully to carry out the provisions of this act, paying a reasonable compensation for all damages which may accrue thereby, which damages shall be ascertained in the same manner as is now by law established in the case of railroad companies; and the stockholders of said corporation shall be personally responsible for the amount of such damages: *And provided also*, That the stockholders of said company shall be personally responsible for all damages which may be done at any time to private property by reason of the exercise of the privileges hereby conferred, or by the acts, omissions or neglect of the said company, its officers or agents.

"Section 8. That before the said company shall take possession of or occupy said stream or streams, said corporation shall give security to the Court of Common Pleas of Union county in such sum as may be deemed sufficient to secure all persons against any damages that may be done to adjoining property-holders in the construction or use of said improvement."

The plaintiff testified that he owned a lot of half an acre, on which were his dwelling-house, barn and other buildings, and a lot of three acres; that in the spring of 1867, the defendants filled the creek with logs for a quarter of a mile, the logs kept the water from the channel and forced it over plaintiff's lots; destroyed his potato crop, worth $60 or $70; tore out the soil, carried the fence away, &c. In August in the same year, several hundred logs were driven upon the lots; the water would rise fifteen inches in a quarter of an hour sometimes, when there was no rain; logs would jam and throw the water out; the water was in the cellar sometimes from one to two feet deep; "when they had splashes the water came in on a sudden."

It was proposed to ask, what was the whole amount of damage in the judgment of the witness done to the property by the freshet and splashes spoken of. This was objected to by the defendants, admitted by the court, and a bill of exceptions sealed.

Witness answered that he would not be willing to take less than $300 for the damage done him.

Other witnesses testified substantially as the plaintiff.

The defendants gave evidence that the flood, in August 1867, was an extraordinary flood, breaking a strong dam called the "Factory dam," and that this was the direct and immediate cause of the injury to the plaintiff's property.

The plaintiff submitted these points, which were affirmed:—

1. The defendants are responsible for any damage that has or may be done at any time to private property, by reason of the

17 P. F. SMITH—27

[White Deer Creek Improvement Co. *v.* Sassaman.]

exercise of the privileges conferred by the Act of May 21st 1864, or by the acts, omissions or neglect of the company, its officers or agents.

2. Case is the proper form of action for a claim, such as the plaintiff seeks to recover in this suit.

The defendants' points were:—

1. The White Deer Improvement Company are not liable for consequential damages caused by their works except to the extent and in the manner imposed upon them by their charter, and are not liable in this action for any damages resulting from the lawful exercise of the rights granted to them by the state.

2. The company are not liable in this action for any damage done or caused by splashes, and if there is any such the plaintiff must resort to his statutory remedy.

4. The corporation is not liable to a common-law action in the exercise of rights conferred by its charter. The action given by the charter, if any, is one against the stockholders personally, for injuries done by the company.

6. The White Deer Improvement Company is liable in this action only for gross negligence in the exercise of privileges as any other individual, on the principle of *sic utere*, &c., and the plaintiff is bound to prove negligence.

7. The proviso of the 7th section of the Act of May 21st 1864, to wit, "that the stockholders of said company shall be personally liable for all damages which may be done at any time to private property, by reason of the exercise of the privileges conferred by said Act of Assembly, or by acts, omission or neglect of said company, its officers or agents," does not apply to actions against the corporation but to actions against the stockholders to establish their personal liability; the rules of law govern the action against the corporation, and the proviso only comes in in an action against the stockholders individually.

8. Under the evidence in the case the plaintiff is not entitled to recover.

All these points were unqualifiedly refused except the 4th, to which the answer was: "As a general rule this is so, but it is not applicable in this case."

The court (Woods, P. J.) further charged:— * * * "As a general rule a corporation is not liable for the using of their corporate privileges if they do so in an ordinary manner and with due care and caution. But this rule will not apply to this company, as by an express provision the stockholders are individually responsible for all loss sustained by riparian owners. It is manifest that the legislature intended to make the company responsible for any loss any one might sustain by reason of using their corporate privileges. If in using the creek for the purpose of floating logs any one is injured, the company would be liable to

[White Deer Creek Improvement Co. v. Sassaman.]

make it good.   You perceive then that the act of Providence in
sending a flood cannot be placed to the defendants, and any loss
arising from the volume of water so sent is the act of God, and
one for which there is no remedy.   But if the loss, or the sending
them down by this creek occasioned any loss, for that the plaintiff
can recover." * * *

The verdict was for the plaintiff for $313.60.

The defendants took a writ of error, and assigned for error ad-
mitting plaintiff's offer of evidence; the answers to the points
of the parties and the part of the charge given above.

*Linn & Dill*, for plaintiffs in error.—Damages under a statute
must be assessed in the manner provided by the statute: McKin-
ney v. Monongahela Nav. Co., 2 Harris 65; Monongahela Nav.
Co. v. Coons, 6 W. & S. 101.

*J. C. Bucher* and *G. F. Miller*, for defendant in error.—The
owner of a dam on his own land is answerable for injury to a
neighbor from freshets enhanced by the dam : Casebeer v. Mowry,
5 P. F. Smith 419. Witnesses can state their opinion of the amount
of damages in the aggregate : Penna. Railroad v. Bruner, Id. 319.

The opinion of the court was delivered, February 9th 1871, by
Agnew, J.—The several assignments of error raise really but
two questions, one of liability and the other of remedy.   The
first depends upon the charter of the company.   The charter it
is evident was granted for the purpose of improving the channel
of White Deer creek and its tributaries as the means of floating
timber-logs, shingles, and other products of the forest into the
West Branch of the Susquehanna river.   The means to be used
were, the removal of rocks and other obstructions from the chan-
nel, straightening and deepening it, and protecting the banks and
confining the currents by cribs, rip-rapping, and guarding the bars.
The duty imposed was by this means to make the creek "answer
the purposes of a floating stream;" but with the proviso that it
should not extend " to provide the means of floating beyond the
*natural flow* of the water of said creek."   The evident intent of
the charter is to confine the powers of the company to the stream
itself within the channel, and no authority is conferred to inter-
fere with the rights of riparian owners, except in the special
power to enter upon lands forming the banks of the creek and its
branches to obtain material to be used in the improvement of the
channel, and to deposit on the banks dirt, gravel and rocks
removed from the bed, and also to enter upon and use the banks
in order to carry out the provisions of the law; in all cases paying
a reasonable compensation to be ascertained as railroad damages
are by law; for which damages the stockholders are made respon-

sible.   Then follows this proviso :  " That the stockholders of said company shall be personally responsible for all *damages* which may be done at any time to *private property* by reason of the *exercise of the privileges* hereby conferred, *or* by the *acts, omissions* or *neglect* of the said company, its officers or agents." This is clearly an *additional* liability to that for damages assessed for entries on the banks, the lands of others, taking material, &c. The subject-matter is different.   The former is assessed *compensation* for use, occupancy and material ; the latter is *damages* for injuries suffered, either by the lawful exercise of privilege, or by unlawful acts or negligence.   It is clear, therefore, that if the company by the use of splash floods, or by the filling of the channel with jammed logs, cause the water to flow over the lands of others outside of the channel and thus damage and destroy private property, it is liable for the injury.   The privilege of improving the channel and creating a floating stream for timber-logs, shingles, &c., is clearly made, by the proviso, subordinate to the rights of riparian owners outside of the channel.   This liability is not confined to the stockholders as such, but primarily attaches to the corporation itself.   It is the corporate body that acts and causes the injury, while the additional personal liability of the stockholders who compose it does not detract from the right of recourse to the company in the first instance.   This is made clear by the last section of the charter, to wit :  " That before the said company shall take possession of, or occupy said stream or streams, said corporation shall give security to the Court of Common Pleas of Union county, in such sum as may be deemed sufficient to secure all persons against any damages that may be done to adjoining property-holders in the *construction* or *use* of said improvement."   The liability therefore of the corporation for injuries arising as well from the " exercise of their privileges" and " *use* of the improvement," as for entering upon lands and taking materials, is quite apparent.

Then as to the remedy there cannot be a doubt.   For injuries such as the plaintiff has suffered, no special remedy is provided. He cannot have an assessment of the damages caused by splash floods, or by suffering logs and timber to pile and jam up the channel; and he is not an " *adjoining* property-holder" as we understand the evidence, in regard to his residence, and perhaps not as to the three-acre lot, so as to be entitled to the benefit of the security if any were given under the last section of the charter.   His only remedy is by a common-law action, and this would be an action on the case.   The argument that no company would accept a charter encumbered by such a liability for damages caused by the exercise of its privileges, is of no weight.   This company is operating under just such a charter, and the extent of its liabilities was a question for its stockholders to consider in

[White Deer Creek Improvement Co. *v.* Sassaman.]

accepting the charter. There is no error in the bill of exception as to the opinion of the witnesses upon the amount or value of the damages. As to unliquidated damages, the result of an injury complicated in its circumstances, a witness acquainted personally with all the facts must be permitted to give his opinion. Such matters are difficult of description, very few men being gifted with that power of description of complex subjects which can picture them to the minds of others, so as to convey a true idea of the reality. An opinion of total or aggregate loss or value is therefore permitted to go to the jury as some evidence of the fact: Forbes *v.* Caruthers, 3 Yeates 527; Kellogg *v.* Krauser, 14 S. & R. 137; 5 P. F. Smith 319.

Upon the whole cause, finding no error in the record, the judgment is affirmed.